AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

AUG 0 1 2018

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
the property located at Bernalillo County parcel #1003050492431110139, having GPS coordinates 34.983167, -106.834407, with photos on Attachment A

Case No. 18mr674

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the _____ District of ___New Mexico___ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1201(a)(1), 2119, 1951, 924(c), 371, and 2 | Kidnapping, Carjacking, Interference with Commerce by Threats or Violence (Hobbs Act), Using/Carrying a Firearm in Furtherance of a Crime of Violence, Conspiracy, and Aiding and Abetting. |

The application is based on these facts:
Refer to the attached 10-page affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Bryan Acee, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/1/18

*Judge's signature*

City and state: ALBUQUERQUE, NEW MEXICO

STEVEN C. YARBROUGH, U.S. MAGISTRATE JUDGE
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

## INTRODUCTION AND AGENT BACKGROUND

1. I, Bryan Acee, being first duly sworn, make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for evidence of a crime; contraband and fruits of a crime; property used in committing a crime; a person to be arrested; and instrumentalities of violations of the United States Code: 18 U.S.C. § 1201(a)(1) Kidnapping; 18 U.S.C. § 2119 Carjacking; 18 U.S.C. § 1951 Interference with Commerce by Threats or Violence (Hobbs Act); 18 U.S.C. § 924(c)(1) Using/Carrying a Firearm in Furtherance of a Crime of Violence; 18 U.S.C. § 371 Conspiracy; and 18 U.S.C. § 2 Aiding and Abetting (hereinafter referred to as the "Target Offenses") for the Subject Premises described in Attachment A and the items set forth in Attachment B.

2. I have been a law enforcement officer for approximately 18 years and am employed as a Special Agent with the Federal Bureau of Investigation (FBI). I am assigned to the FBI Albuquerque Field Office, Violent Crime Major Offender (VCMO) squad, where I primarily investigate violent repeat offenders, armed robberies, kidnappings, and FBI fugitives. Prior to my assignment to the VCMO squad, I served on the FBI Safe Streets Gang Task Force in Albuquerque, New Mexico, and the FBI/DEA Hybrid Cross Border Drug Violence Squad in Las Cruces, New Mexico. I was a police officer and detective before joining the FBI.

3. I have arrested several hundred persons for offenses related to drug distribution, assault, armed robbery, homicide, racketeering offences, gang crimes, firearm violations, and other crimes. I have served as a law enforcement instructor and presenter on drug and gang investigations and the utilization of confidential informants at several law enforcement academies and organizations in California, Arizona, Washington, Oregon, and New Mexico.

4. This affidavit is based on information obtained from kidnap victim "D.M." and FBI Special Agents who have helped me in this investigation. This affidavit does not set forth all of my

Page | 1

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

knowledge or summarize all of the investigative efforts in this investigation. This affidavit is being submitted in support of a search warrant for the Subject Premises.

### FACTS AND CIRCUMSTANCES ESTABLISHING PROBABLE CAUSE

5. On July 26, 2018, at approximately 6:00 a.m., D.M., a 69-year old male, exited his residence in Placitas, New Mexico, through his garage and prepared to travel to work in his red 2004 Ford Ranger. D.M. is the owner of a successful business that has locations in Albuquerque and Santa Fe, New Mexico.

6. As D.M. entered his vehicle, an unknown male subject (UNSUB 1) wrapped his arms around D.M.'s neck and covered D.M.'s mouth. D.M. started to struggle with UNSUB 1 and observed a second male subject (UNSUB 2) approach with a firearm in his hand. D.M. observed both UNSUBS to have hats or stocking caps on their heads and blue bandanas over their faces. While D.M. struggled to break free of UNSUB 1's grip, UNSUB 2 approached and struck D.M. in the face several times with a pistol. D.M. sustained lacerations to his face and head as a result.

7. During the struggle, D.M. realized a stub-nosed revolver had fallen to the ground and D.M. was able to retrieve the firearm. D.M. pointed the gun at one of the UNSUBS and pulled the trigger several times; however, the revolver did not fire. D.M. then realized the other UNSUB was armed with a semi-automatic pistol. D.M. feared he might be shot by the UNSUBS and stopped fighting.

8. The UNSUBS forced D.M. into the middle seat of his Ford Ranger and placed a shirt over his head to obstruct his vision. D.M. was seated between the two UNSUBS and all three men departed the residence.[1] Both UNSUBS displayed firearms during the kidnapping of D.M. and one UNSUB kept a firearm pointed at D.M. as they drove away from D.M.'s residence.

---

[1] FBI Special Agents obtained surveillance video footage from neighborhood cameras and observed the Ford Ranger depart D.M.'s residence. The agents who initially reviewed the video surveillance told me it appeared only one occupant was inside the truck, as noted in the criminal complaint I submitted to the court on July 27,

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

9. D.M. indicated the UNSUBS knew him by his first name and told D.M. they knew him to have two safes[2] and a significant amount of money in the bank. The UNSUBS initially demanded D.M. pay them $50,000. D.M. convinced the UNSUBS he did not have $50,000, but could come up with $10,000. The UNSUBS took D.M.'s cellular phone and wallet. They removed $600 from D.M.'s wallet.

10. After departing the residence, the UNSUBS drove north on I-25 for several miles and stopped at a remote location. The UNSUBS tied D.M.'s hands and feet with tie-downs and placed him in the bed of D.M.'s Ford Ranger. The UNSUBS removed items from the bed of the truck to create room for D.M.[3] The UNSUBS made D.M. lay down in the bed of the truck and covered his body with carpet and other items. The UNSUBS then drove D.M. around for some time. While being driven around, D.M. was able to see under or through an opening in his face covering and caught a glimpse of a restaurant sign in Bernalillo, New Mexico, that D.M. was familiar with.

11. Sometime later, while still restrained in the bed of the truck, D.M. observed a Loves Travel Stop and Burger King restaurant, which were co-located together. I believe the Loves/Burger King to be located on Central Avenue SW and Atrisco Vista Boulevard (just south of Interstate 40). Shortly after passing the Loves/Burger King, D.M. recalled travelling down a dirt road that was very bumpy. D.M. indicated they travelled on the dirt road for several minutes and then stopped at an unknown location that was fenced, contained several vehicles, and outbuildings. D.M. described the location as being remote, unlike a common residential neighborhood, and supposed it was on an Indian Reservation – given the time duration he had been in the truck and the remoteness of the location.

12. After D.M. and the UNSUBS arrived at the unknown location, D.M. was placed in a shed-like structure on a couch. D.M. remained blind-folded, but observed the floor to be dirt. D.M.

---

2018, Case No. 18mj2472. Upon further review, and with enhanced zoom capabilities and added angles, I believe three people can be seen inside the cab of the truck as it departed the neighborhood.
[2] D.M. confirmed with FBI Special Agents that he did possess two storage safes.
[3] FBI Special Agents subsequently recovered the items removed from D.M.'s truck. The recovery was made possible once agents began tracking D.M.'s cellular telephone.

Page | 3

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

heard the UNSUBS interact with two females in Spanish. D.M. observed three dogs at the location. D.M. observed the UNSUBS cover his Ford Ranger with a gray car cover.

13. The UNSUBS had D.M. call his daughter, J.L., and provided D.M. with instructions on where to wire transfer $9,400 ($10,000-$600). The funds were to be sent to a specific account at a bank in Guadalajara, Mexico. D.M. called J.L. several times regarding the wire transfer, as the bank routing information was not sufficient to complete the transaction. During one of the conversations, J.L. spoke with one of the UNSUBS about the pending wire transfer. The UNSUB informed J.L. that "$30,000 can be deposited in that account no problem" and questioned why J.L was having problems sending $10,000. J.L. explained the bank required additional information because the transfer was being sent international. The UNSUB suggested J.L. just get cash and they could meet in the downtown Albuquerque area. J.L was able to record a total of four calls with D.M. and the UNSUB. I have reviewed those recordings.

14. The FBI obtained call detail records for J.L.'s cell phone and determined the UNSUBS' telephone number to be XXX-XXX-4555[4] (TARGET TELEPHONE). I have confirmed the TARGET TELEPHONE to have service with T-Mobile US, Inc. The subscriber on the account was listed as JOSE RAMIREZ, with an address in Albuquerque, New Mexico. T-Mobile's records indicated RAMIREZ activated the account on July 3, 2018.

15. FBI Special Agents subsequently obtained federal search warrants on the TARGET TELEPHONE to include: historical and real-time cellular tower and GPS location data, call detail records, and Google location data.

---

[4] The full telephone number is known to me; however, I have redacted it because full disclosure would directly impact our investigation and the apprehension of the suspects.

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

### Victim Located

16. On July 26, 2018, at approximately 10:45 p.m., D.M. was dropped off near a gas station in the South Valley area of Albuquerque, New Mexico. D.M. removed a shirt that had been placed over his head and walked to the nearby gas station. D.M.'s injuries to his face and head were visible and store clerks immediately called 911 to summon paramedics and law enforcement.

17. Emergency responders and FBI Special Agents arrived at the gas station a few minutes later. I briefly spoke with D.M., who was in the back of an ambulance, prior to his transport to an area hospital. FBI Special Agents spoke with D.M. at the hospital and in subsequent interviews. D.M. provided details and descriptions of the Subject Premises, to include a hand drawn sketch of the property and items located thereon.

### The Search for Jose Ramirez

18. During the early morning hours of July 27, 2018, FBI Special Agents and New Mexico Corrections Department fugitive investigators searched two residences for RAMIREZ; however RAMIREZ was not located. D.M.'s Ford Ranger was not located and the FBI entered it into the National Crime Information Center (NCIC) as a stolen vehicle.

19. On July 27, 2018, I submitted a criminal complaint and arrest warrant to the Court charging RAMIREZ with 18 U.S.C. § 1201(a)(1) Kidnapping, 18 U.S.C. § 2119 Carjacking, 18 U.S.C. § 1951 Interference with Commerce by Threats or Violence (Hobbs Act), 18 U.S.C. § 371 Conspiracy, and 18 U.S.C. § 2 Aiding and Abetting. The complaint and arrest warrant were authorized by U.S. Magistrate Judge Steven C. Yarbrough, Case No. 18mj2472.

20. RAMIREZ is on parole with the New Mexico Corrections Department for a conviction of aggravated battery against a household member and being a felon in possession of a firearm. RAMIREZ has prior federal convictions for 8 U.S.C. § 1324 Alien Smuggling (1999) and 21 U.S.C. § 841(A)(1)

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Possession with Intent to Distribute Marijuana (2001). RAMIREZ also has a felony conviction for forgery in Arizona (1997).

21. On July 27, 2018, the New Mexico Corrections Department issued a felony arrest warrant for RAMIREZ for parole violations, warrant number 18-316.

22. On July 28, 2018, the FBI attempted to geo-locate the TARGET TELEPHONE and RAMIREZ via FBI resources and pursuant to federal search warrants authorized by this Court.

23. On July 29, 2018, D.M., who is an aircraft pilot, utilized his own means and methods to fly over the route he believed he had travelled. D.M. identified the Subject Premises as the location he had been held captive at. D.M. noted the GPS coordinates of the location. D.M. then sent the information to FBI Special Agent Thad Clancy.

24. On July 30, 2018, FBI Special Agents and New Mexico Corrections Department fugitive investigators searched two residences for RAMIREZ; however RAMIREZ was not located. FBI Special Agents also surveilled dozens of locations around Albuquerque that RAMIREZ was known to frequent.[5] The high-frequency locations were surveilled by the FBI.

25. On July 30, 2018, Special Agent Ryan Kacher and I conducted physical surveillance on the Subject Premises and noted the location resembled the description and hand-drawn sketch D.M. provided agents.

26. On July 30, 2018, Special Agent Ross Zuercher served a federal search warrant on Google for historical location data on the TARGET TELEPHONE. Google records indicated the TARGET TELEPHONE was at the Subject Premises on the morning of July 27, 2018, the morning after D.M. was released.

---

[5] RAMIREZ wore a GPS ankle monitor as a condition of his parole and dutifully wore the device between July 2, 2018 and July 26, 2018. RAMIREZ cut the ankle monitor off on or about July 26, 2018 (the day D.M was kidnapped). FBI Special Agents utilized the location data from July 2, 2018 to July 26, 2018, to assemble "pattern-of-life" and historical locations for RAMIREZ.

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

27. On July 31, 2018, at approximately 1:00 a.m., an Albuquerque Police Department (APD) officer observed D.M.'s stolen Ford Ranger being driven in the northeast section of Albuquerque and stopped the vehicle. The driver was arrested and transported to a nearby APD substation. Special Agent Clancy and I responded to the substation and interviewed the driver. The driver was forthcoming and cooperated with FBI Special Agents. The driver consented to a search of his cellular telephone and agents searched the phone. The driver was subsequently booked into jail on local felony charges for receiving/possessing a stolen vehicle and the New Mexico Corrections Department placed a probation violation hold on him.

28. On July 31, 2018, members of the FBI Evidence Response Team (ERT) searched D.M.'s truck and located a rope, with an apparent blood stain, behind the driver's seat; a section of carpet, with apparent blood stains, in the bed of the truck; and apparent blood stains on the headliner and dome light, located in the cab of D.M.'s truck.

29. On July 31, 2018, an FBI aircraft flew over the Subject Premises and photographed the location. The FBI pilot noted vehicles and persons moving about the property. The pilot provided me with several photographs of the Subject Premises, some of which have been included in Attachment A.

30. On July 31, 2018, beginning at about 5:00 p.m., the TARGET TELEPHONE was activated and registered near a transit center in Los Angeles, California. The FBI monitored the TARGET TELEPHONE's location pursuant to a previously issued search warrant authorized by this Court and requested FBI Special Agents in Los Angeles respond to the area. The TARGET TELEPHONE remained active and near downtown Los Angeles for about one hour and twenty minutes before it stopped registering locations (presumably due to the phone being powered down). Members of the FBI Los Angeles fugitive task force combed the area, but did not locate RAMIREZ or the TARGET TELEPHONE.

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

31. The possibility remains that RAMIREZ could be at the Subject Premises, as he may have discarded the TARGET TELEPHONE or provided it to another person.

### The Subject Premises

32. The Subject Premises is contained within a square plot of land, surrounded by rudimentary range fencing, used tires, and discarded vehicle parts. There are several structures, enclosed trailers, and vehicles on the Subject Premises. Some of the vehicles appear to be drivable, while others do not.

33. I have been unable to confirm the address of the Subject Premises or locate information about the Subject Premises in FBI and other law enforcement databases. I determined the GPS coordinates at the approximate center of the Subject Premises to be 34.983167, -106.834407 and noted those points on Attachment A.

34. On July 31, 2018, I reviewed Bernalillo County Planning and Development Department records and noted the Subject Premises to be identified in Bernalillo County records as parcel ID 1003050492431110139, with property description "SE NE NE T9N R1ESEC28."

35. I am familiar with the area around the Subject Premises and know it to be located within the northern edge of the "Pajarito Mesa," which is near the South Valley of Bernalillo County, New Mexico. I do not believe the Pajarito Mesa is an official town within New Mexico and I am aware that most roads in the Pajarito Mesa are not marked or posted. I have observed the majority of the houses in the Pajarito Mesa do not have posted or visible addresses and I am aware the area lacks city services, such as underground water infrastructure, utilities, and sewage. I have heard law enforcement officers, fire department officials, and New Mexico media reporters describe the structures and/or infrastructure within the Pajarito Mesa as being uninhabitable, unorganized, and unsafe.

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

36. In addition to conducting physical surveillance of the Subject Premises, I reviewed Google map and FBI aerial surveillance images of the Subject Premises. Color photographs of the Subject Premises have been attached and incorporated in Attachment A.

### The Items to be Seized

37. Based on the information contained herein and my training and experience over the past 18 years, I believe evidence of the Target Offenses will be located at the Subject Premises when the warrant is served. I am requesting FBI Special Agents be authorized to search the Subject Premises for evidence of kidnapping, carjacking, robbery, extortion, using or carrying a firearm in furtherance of a crime of violence, conspiracy, and aiding and abetting, to include, but not limited to property belonging to the victim, hair, fibers, DNA, blood, fingerprints, bindings, tie downs, bandanas, watch caps or ski masks, firearms, ammunition, stored data on any GPS devices, bank records, wire transfer receipts, bank routing numbers, bank addresses, telephone numbers, or similar financial documents.

38. I am aware kidnap crews, or kidnappers, utilize cellular telephones and computers to communicate, conduct target (victim) research, access maps, driving directions, send photographs, plan kidnappings, scout locations, and study victim's residences, businesses, and social media accounts. I am requesting permission to seize cellular telephones, computers, digital cameras, or other digital devices at the Subject Premises.

39. I am aware the aforementioned items may be found within structures, vehicles, out buildings, storage containers, or on the grounds of the Subject Premises.

### **CONCLUSION**

40. Based on the aforementioned information, I submit that probable cause exists to search the Subject Premises, further described in Attachment A, for evidence of the Target Offenses, more

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

specifically described in Attachment B. I believe RAMIREZ, who is currently wanted by the FBI and New Mexico Corrections Department, may be at the Subject Premises.

41. Based on the nature of the crimes being investigated and the challenges associated with seizing and searching the Subject Premises, I have requested FBI aircraft and FBI Special Weapons and Tactics (SWAT) teams assist with the service of the requested warrant.

Respectfully submitted,

Bryan Acee
FBI Special Agent

SUBSCRIBED AND SWORN TO BEFORE ME ON AUGUST 1, 2018:

HONORABLE STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NEW MEXICO

**ATTACHMENT A**
**PREMISES TO BE SEARCHED**

The property and vehicles depicted in the four photographs below and located at Bernalillo County records parcel ID 100305049243110139, with property description "SE NE NE T9N R1ESEC28," having GPS coordinates **34.983167, -106.834407** at the approximate center of the Subject Premises, and contained within a square plot of land, surrounded by rudimentary range fencing, used tires, and discarded vehicle parts. There are several structures, enclosed trailers, and vehicles on the Subject Premises. The search is to include all structures, outbuildings, sheds, vehicles, trailers, and containers located on the property of the Subject Premises.





A1

ATTACHMENT A
PREMISES TO BE SEARCHED





A2

# ATTACHMENT B
## ITEMS TO BE SEIZED

All evidence of violations of the United States Code: 18 U.S.C. § 1201(a)(1) Kidnapping; 18 U.S.C. § 2119 Carjacking; 18 U.S.C. § 1951 Interference with Commerce by Threats or Violence (Hobbs Act); 18 U.S.C. § 924(c)(1) Using/Carrying a Firearm in Furtherance of a Crime of Violence; 18 U.S.C. § 371 Conspiracy; and 18 U.S.C. § 2 Aiding and Abetting, including but not limited to the following items:

1) property belonging to the victim;

2) hair, fibers, DNA, blood, fingerprints, bindings, tie downs, bandanas, watch caps or ski masks;

3) stored data on any GPS device indicating locations searched, directions given, and locations travelled to and/or through;

4) bank records and documents, wire transfer receipts, bank routing numbers, bank addresses, telephone numbers, or similar financial documents;

5) proceeds of kidnapping activities: including currency, jewelry, vehicles, and other assets or financial records related thereto;

6) cellular telephones, computers, digital cameras, and other digital devices;

7) firearms and ammunition;

8) articles of property tending to establish the identity of persons in control of premises, vehicles, storage areas, and containers being searched, including rent receipts, addressed envelopes, and keys.

B1